**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re*: **A.H. and D.M.**

**No. 17-0386** (Mingo County 16-JA-59 & 16-JA-60)

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Father N.H., by counsel Karen S. Hatfield, appeals the Circuit Court of Mingo County's March 30, 2017, order terminating his parental rights to A.H. and D.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Susan J. Van Zant, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in finding that termination of his parental rights was in the children's best interests.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2016, the DHHR filed an abuse and neglect petition against petitioner. According to the petition, the DHHR received a referral that petitioner committed acts of domestic violence in the children's presence. The DHHR alleged that petitioner choked his wife, R.H., until she passed out, with at least one child present at that time. The children also reported witnessing petitioner put his hands around his adoptive mother's neck in an attempt to choke her. The DHHR further alleged that petitioner's biological mother recounted acts of petitioner's domestic violence, including attempting to choke her and using excessive corporal punishment against the children. Finally, the DHHR detailed petitioner's significant criminal history, including arrests in 2013, 2015, and 2016.

In November of 2016, the circuit court held a preliminary hearing in which it heard the testimony of a Child Protective Services ("CPS") worker, who testified that petitioner had a significant history of domestic violence dating back to 2012, at which time CPS opened a case

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

involving petitioner. However, incidents of domestic violence continued to occur throughout 2013 and 2014. The CPS worker noted that the DHHR provided petitioner extensive services, including a psychological evaluation, anger management classes, parenting classes, and individualized skills. Despite this support, the CPS worker testified that petitioner continued to be violent. After hearing testimony, the circuit court found that there was probable cause to file the petition and remove the children from petitioner's physical custody.

In January of 2017, the circuit court held an adjudicatory hearing, which was continued to allow for petitioner's transport due to his incarceration. The circuit court, based on prior testimony and orders, denied petitioner's request for an improvement period and adjudicated him as an abusing parent due to his neglect and failure to protect the children from neglect, including committing acts of domestic violence against the women in his family in the children's presence.

The circuit court held a dispositional hearing in March of 2017. The circuit court granted the DHHR's request that it take judicial notice of an ongoing criminal case in which petitioner's probation was revoked due to committing domestic violence against his wife. Petitioner's sentence of not less than one nor more than three years was reinstated during that criminal case. The circuit court proceeded to hear testimony from multiple witnesses who detailed petitioner's violent behavior and acts of domestic violence in the children's presence. Specifically, the circuit court heard testimony from the mother of A.H., who testified that on one occasion, petitioner beat her and kicked her in the presence of A.H., who began to scream and cry. A.H.'s mother also testified that A.H. was diagnosed with post-traumatic stress disorder as a result of witnessing petitioner's acts of domestic violence against A.H.'s mother and grandmother. Ultimately, the circuit court found that petitioner was unwilling and unable to adequately provide for the children's needs; that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse in the near future, as evidenced by his failure to fully participate in the services provided; and that termination of petitioner's parental rights was necessary for the children's welfare. Therefore, the circuit court terminated petitioner's parental rights by order entered March 30, 2017.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if

---

[2]According to the DHHR, A.H. is with her mother and D.M. is with P.M., her grandmother, who is the legal custodian pursuant to an earlier family court order. The permanency plan is for the children to remain in their respective homes.

the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that that termination of his parental rights was not in the children's best interests, contrary to the finding of the circuit court. We disagree. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. Further, West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

Based on the record before us, it is clear that petitioner failed to substantially correct the conditions of abuse and neglect. At the preliminary hearing, a CPS worker testified that a case was opened with petitioner as early as 2012 due to his commission of acts of domestic violence in the children's presence. Petitioner began receiving several services, including parenting classes, individualized skills, anger management, counseling, and a psychological evaluation. The CPS worker testified that despite these services, petitioner continued to commit domestic violence in the children's presence and the case remained open. The CPS worker testified that in 2013, A.H.'s mother reported an incident in which petitioner, in the presence of A.H., threw a beer can at her head, choked her, and punched her such that she had to hide underneath the home until police arrived to arrest petitioner. A.H.'s mother confirmed the abuse during her testimony at the dispositional hearing and stated that A.H. was diagnosed with post-traumatic stress disorder as a result of witnessing the domestic violence. The CPS worker further testified that petitioner recently committed domestic violence against his wife, which led to the filing of the current petition. Petitioner's wife admitted to police that petitioner choked her until she passed out. She waited until petitioner fell asleep that night before taking D.M. to a nearby gas station in order to call the police. Both children reported to the CPS worker that they had witnessed petitioner attempt to choke his adoptive mother. The record establishes that petitioner, despite being offered services, continued in his violent behavior over the course of several years and failed to correct the conditions of abuse and neglect.

We find no merit in petitioner's argument that he should have been granted additional time to correct the conditions of abuse and neglect. Petitioner relies on the fact that the children were placed with their respective mothers and thus asserts that their interests would not have been prejudiced by allowing the case to remain open until petitioner's release from his incarceration. However, we have previously held that West Virginia Code § 49-6-5 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W.Va. 325, 344, 540 S.E.2d

3

542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* The record has clearly established that even had the circuit court granted petitioner additional time to correct the conditions of abuse, there is no evidence to show that he could have done so in light of his extensive violent history even when being offered services. Based upon the evidence outlined above, we find no error in the circuit court's finding that termination was in the children's best interests. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 30, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker